United States District Court
Southern District of Texas
**ENTERED**
March 01, 2022
Nathan Ochsner, Clerk

| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

Michael Grogan, §
§
§
Plaintiffs, §
§
versus § Civil Action H-20-3337
§
Seaboard Marine, Ltd., Inc., *et al.*, §
§
Defendants. §

## Opinion on Summary Judgment

1. *Background.*

    Michael Grogan was a longshoreman on the EMS Trader – owned by Herman Buss GMBH & Cie KG. Seaboard Marine, LTD, is the time charterer for the ship.

    On September 12, 2019, Grogan slipped on an "unknown substance" and fell to the lower deck. He says that there was "no safety rope, guard railing, or other safety device or barrier" to stop his fall.

    On September 30, 2020, Grogan sued Seaboard Marine and Herman Buss: (a) under section 905(b) of the Longshore Harbor Worker's Compensation Act, and (b) for "negligence and gross negligence." Seaboard has moved for summary judgment. It will prevail.

2. *Key Provisions.*

    The delivery clause of the time charter states that the "Vessel shall be placed at the disposal of the Charterers. ... Vessel on her delivery shall be ready to receive cargo with clean-swept holds and tight, staunch, strong and in every way fitted for ordinary cargo service."

Under clause one, Herman Buss "shall maintain vessel's class and keep her in a thoroughly efficient state in hull, machinery and equipment for and during the service."

Under clause eight – Prosecution of Voyages – "the Captain shall prosecute his voyages with due despatch, and shall render all customary assistance with ship's crew and boats. The Captain (although appointed by the Owners) shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to perform all cargo handling at their expense under the supervision of the Captain."

Under clause 37 – Securing of Cargo – "Supervision of securing the containers simultaneously with actual ladhing/securing and unlashing of containers in port but same to be at charterers' risk and responsibility, crew working as charterers' servants."

Under clause 71 – Securing of Cargo Inside Containers – "Securing cargo inside containers and/or flats and any other unit loads to be entirely charterers' concern and responsibility. Any damage to the ship, her tackle, apparel, furniture or else, resulting from insufficient lashing/securing of cargo in or on such loads, to be repaired at charterers' expense and in charterers' time."

3. *Contract Interpretation.*

As an initial matter, Grogan's alternative request to delay deciding this motion until discovery can be done with Herman Buss – whenever it is served – is denied. The additional discovery requested is either vague, irrelevant to the issues within this motion, or items that could have been requested before but were not sought – for whatever reason. Grogan has not shown the required specificity to delay deciding this motion.[1]

The parties' dispute largely centers on whether, under the time charter, Seaboard was responsible for the condition of the ship or negligence by the crew – or did it owe a duty to Grogan. This amounts to interpreting the language of the charter.

---

[1] *See Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 877, 894 (5th Cir. 2013).

Generally under a time charter, the owner keeps possession and control of the ship, hires the crew, and maintains the ship.[2] Clear, express language is needed to rebut the presumption that the parties did not intend to shift responsibility for negligence and unseaworthiness to the charterer.[3] Otherwise, the charterer is liable under section 905(b) if the cause of harm is within its "traditional sphere of control" – which includes the cargo route, general mission, and time requirements, but not the owner's control over condition.[4]

Grogan is correct that "[i]n certain circumstances, time charterers may be held liable for independent negligent acts." However, each case that he cites in support of that proposition held the time charterer liable for actions it took directly related to cargo activities in which it had control – unloading in extreme weather, sailing in rough seas, defective stow equipment, and discharging cargo. This case is clearly distinguishable. Grogan argues that, because his job generally was "performing ... cargo operations," the agreement "sets forth some level of responsibility" on Seaboard. This argument misses the mark. Grogan does not say that he was injured while doing his cargo-related duties. He slipped on an "unknown substance" and fell because there was no rail. Both relate directly to the condition of the ship itself and do not relate to Seaboard's traditional sphere of control to make it liable.

The language of the time charter is unambiguous. Herman Buss – not Seaboard – was responsible for keeping the ship seaworthy and in good condition. Grogan's rebuttal to this presumption was a brief reference and a cherry-picked line from two clauses – 37 and 71. Both clauses, however, concern cargo operations and not the seaworthiness or condition of the ship. Grogan, again, does not say that he was injured by unsecured cargo but a slip and fall. He also admits that Seaboard had no control over his work.

Because Grogan cannot show that Seaboard was responsible for the ship's condition, his claims against Seaboard fail.

---

[2] *Walker v. Braus*, 995 F.2d 77, 81 (5th Cir. 1993).

[3] *Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1520 (5th Cir. 1996).

[4] *Randall v. Chevron, U.S.A., Inc.*, 13 F.3d 888, 898 (5th Cir. 1994).

4.   *Conclusion.*

Michael Grogan will take nothing from Seaboard Marine, LTD.


Signed on March 1, 2022, at Houston, Texas.



Lynn N. Hughes
United States District Judge